IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-092-CR





JESSIE LEE DARICEK, JR.,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE COUNTY COURT OF SAN SABA COUNTY



NO. 5188, HONORABLE HARLEN BARKER, JUDGE PRESIDING



 




 After finding appellant guilty of the misdemeanor offense of driving while
intoxicated, Tex. Rev. Civ. Stat. Ann. art. 6701l-(1)(a)(2)(B) (West Supp. 1994), the jury
assessed punishment at confinement for thirty days and a fine of five hundred dollars, both of
which were probated for one year. In his first point of error, appellant contends the evidence is
insufficient to support the conviction. In points of error two and three, appellant asserts that the
trial court erred in its instructions to the jury defining alcohol concentration. We overrule
appellant's points of error and affirm the judgment of the trial court.

 The Court of Criminal Appeals has stated that "under Article 6701l-1 there are
really two types of DWI offenses." State v. Carter, 810 S.W.2d 197, 200 (Tex. Crim. App.
1991). The Carter court articulated the difference as follows:



 First, under Article 6701l-1(a)(2)(A), there is a "loss of faculties" offense. 
This "loss of faculties" offense may be established by proving the defendant drove
or operated a motor vehicle in a public place while not having the normal use of
his mental faculties, or while not having the normal use of his physical faculties,
because of the introduction into his body of (1) alcohol; (2) a controlled substance;
(3) a drug; or (4) a combination of two or more of those substances. Second,
under Article 6701l-1(a)(2)(B), there is a per se offense. This per se offense may
be established by proving the defendant drove or operated a motor vehicle in a
public place while having an alcohol concentration of 0.10 or more in his blood,
breath, or urine.



Carter, 810 S.W.2d at 200. (citations omitted). In the instant cause, the information alleged that
appellant operated a motor vehicle in a public place, "while intoxicated, defendant's blood having
an alcohol concentration of at least 0.10."

 D.P.S. Trooper Stephen Boyd was on routine patrol on State Highway 16 in San
Saba County at approximately 6:30 p.m. on February 5, 1992, when he observed a car
approaching at a high rate of speed. After a radar check showed the vehicle's speed at 103
m.p.h., Boyd activated the patrol car's lights and turned in pursuit of the vehicle. When the
vehicle came to a stop, Boyd identified appellant as the driver. Boyd observed that appellant's
eyes were "very bloodshot"; he had a strong odor of alcohol on his breath and a slight slur in his
speech. Boyd decided to give field sobriety tests to appellant because of "alcohol on his breath
and seeing his demeanor." Appellant's performance on all six points of the horizontal gaze
nystagmus test were unsatisfactory. Boyd stated that he formed the opinion that appellant was
intoxicated because of his performance on the foregoing test and three additional field-sobriety
tests. Appellant was taken to the San Saba County Sheriff's office and given breath tests with an
intoxilyzer, which showed that appellant's alcohol concentration was 0.128 at 7:32 p.m. and 0.112
at 7:36 p.m.

 Appellant testified that he drank three beers and ate two sandwiches "around 5:00
p.m." Elmer Weber, technical supervisor of the breath testing program for D.P.S., testified that
the alcohol in one beer would elevate a person's blood alcohol to about 0.02. Weber stated that
if a person drank three beers, his blood alcohol would never reach 0.06 because time required for
alcohol to be absorbed in the body allows some alcohol to be passed out and metabolized by the
body. Weber opined that a male weighing two hundred pounds, who consumed three beers and
two sandwiches would have an alcohol concentration an hour and a half later of no more than
0.03." Weber related that the results of a breath test and a blood test "match up," having "only
very slight difference, a few thousandth of a percent, one or two." 

 Appellant urges that the evidence is insufficient to support his conviction because
the State failed to relate the results of his breath test at 7:35 p.m. to his alcohol concentration at
6:30 p.m. when he was driving. Appellant directs our attention to Weber's testimony that he did
not know what appellant's alcohol concentration would have been at 6:30 p.m.

 The validity of the test, the reliability of the machine and the qualifications of the
operator are not challenged. In addition, the "jury must still be convinced beyond a reasonable
doubt that an inference can be made from the results of the chemical test that the defendant had
a 0.10 alcohol concentration in his body at the time of the offense." Forte v. State, 707 S.W.2d
89, 95 (Tex. Crim. App. 1986). In McCafferty v. State, 748 S.W.2d 489 (Tex. App.--Houston
[1st Dist.] 1988, no pet), cited by appellant, the defendant was the driver of a vehicle that was in
a single car accident around 2:30 a.m. The officer arrived at the scene at 3:50 a.m. and gave the
defendant field sobriety tests which she failed. The defendant was taken to the police station and
given a breath test at 4:45 a.m. that showed an alcohol concentration of 0.18. In holding the
evidence insufficient to support the conviction, the court found that the State did not exclude the
hypothesis that the defendant had been drinking between the time she last drove the car at 2:30
a.m. and the arrival of the officer at 3:50 a.m. McCafferty, 748 S.W.2d at 491. The court also
noted that the State's expert witness did not explain absorption and metabolization rates of
intoxication, or in any way connect the breath test results at 4:45 a.m. to the defendant's condition
when driving at 2:30 a.m. McCafferty, 748 S.W.2d at 491.

 In reviewing the sufficiency of the evidence to support a conviction, we must
determine whether, viewing the evidence in the light most favorable to the conviction, any rational
trier of fact could have found the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319 (1979); Casillas v. State, 733 S.W.2d 158, 160 (Tex.
Crim. App. 1986), appeal dism'd, 484 U.S. 918 (1987). Because this cause was tried after the
effective date of Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991), we do not utilize
the McCafferty construct of excluding every reasonable hypothesis in determining the sufficiency
of the evidence. We hold that the proof needed to show the "loss of faculties" offense and the
"per se offense" are not mutually exclusive. Clearly, a test showing that blood had a 0.10 alcohol
concentration is probative evidence of a loss of faculties. Conversely, evidence of his failure to
pass field sobriety tests immediately after driving his vehicle tends to make it more probable that
the failed blood or breath test taken an hour later accurately reflect the driver's condition at the
time of the offense. See Tex. R. Crim. Evid. 401.

 Here no time elapsed between the appellant's operation of the vehicle and the
officer's opportunity to observe his demeanor and administer field sobriety tests. The results of
the breath test, the expert testimony of absorption and metabolization rates of intoxication in a
person who drinks three beers and eats two sandwiches, and the officer's opinion that appellant
was intoxicated based on field sobriety tests, provide cumulative evidence sufficient to enable the
jury to relate the results of the breath test to appellant's alcohol concentration at the time he was
stopped. We hold that any rational trier of fact could have inferred beyond a reasonable doubt
that appellant had a 0.10 alcohol concentration in his body at the time of the offense. Appellant's
first point of error is overruled.

 In his second point of error, appellant asserts that the trial court erred by including
its in charge, over appellant's timely objection, an instruction that "alcohol concentration means
the number of grams per 210 liters of breath," when the information charged that appellant's
blood had an alcohol concentration of at least 0.10. In its charge, the court included the statutory
definition that "alcohol concentration means: (a) the number of grams of alcohol per 100
milliliters of blood; (b) the number of grams of alcohol per 210 liters of breath; or (c) the number
of grams of alcohol per 67 milliliters of urine." See Tex. Rev. Civ. Stat. Ann. art. 6701l-1(a)(1)(A)(B)(C). Appellant contends that the instruction that alcohol concentration means the
number of grams of alcohol per 210 liters of breath authorized a conviction on a theory not
alleged in the indictment.

 We have been unable to find any authority holding that it is necessary to specify
blood, breath or urine when the indictment or information asserts an alcohol concentration of
0.10. However, "where the unnecessary matter is descriptive of that which is legally essential
to charge a crime, it must be proven as alleged even though needlessly stated." Wray v. State,
711 S.W.2d 631, 633 (Tex. Crim. App. 1986). We hold the court erred in failing to sustain
appellant's objection to the charge.

 The Almanza test has become the standard by which Texas appellate courts
determine whether an error in the court's charge requires reversal. See Almanza v. State, 686
S.W.2d 157 (Tex. Crim. App. 1984). Applicable to the instant cause, the Almanza court held:



If the error in the charge was the subject of a timely objection in the trial court,
then reversal is required if the error is `calculated to injure the rights of
defendant,' which means no more than that there must be some harm to the accused
from the error. In other words, an error which has been properly preserved by
objection will call for reversal as long as the error is not harmless.



Almanza, 686 S.W.2d at 171.

 Appellant urges that he was harmed by Weber's testimony that the results of a
breath test and the results of a blood test "match up" based on breath testing instruments that were
calibrated in a blood-alcohol to breath-alcohol partition ratio of 2100 to 1. Under cross-examination, Weber stated that he had seen a study that suggested that the ratio could be as low
as 1 to 1,000. Based on defense counsel's hypothetical example of a partition ratio of 1 to 1050
instead of 1 to 2100 with a breath test of 0.128, Webster testified that the blood alcohol would
only be about .06 or .07. Weber characterized the partition ratio used in the hypothetical example
as "abnormal." Weber related that the 1 to 2100 ratio was designed for a breath test to reflect the
alcohol in the blood and that it had been used for this purpose in Texas since 1968; "we weren't
by any means the first state" to use this test. Weber stated that many thousands of subjects were
given the breath test using the 1 to 2100 ratio in correlating the results with a blood test. Weber
testified that he had conducted tests of comparisons between breath-alcohol concentration level
versus blood test concentration levels using the 1 to 2100 ratio and found "[I]t's occasionally right
exactly the same or a little bit higher or a little bit lower." It's just slightly a few thousandths--a
thousandth or two above or below."

 In the instant cause, expert testimony reflected the reliability of the method used
to correlate breath tests with a blood test based on thousands of tests and used in this state since
1968. Our review of the evidence fails to reveal any abnormal condition that was shown to place
appellant within the abnormal exception used in defense counsel's hypothetical example. We hold
that the error in the court's charge has not resulted in "some harm" to appellant. Appellant's
second point of error is overruled.

 In his third point of error, appellant asserts that the trial court erred by suggesting
to the jury in its instruction that a breath test might reflect a person's blood-alcohol level. Our 
disposition of appellant's second point of error disposes of this contention. Appellant's third point
of error is overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

Before Justices Powers, Kidd and Davis*

Affirmed

Filed: May 4, 1994

Publish









* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).