NO. 07-09-00259-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



OCTOBER
6, 2010

 



 

BETTY A. RIOS, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE COUNTY COURT AT LAW NO. 1
OF LUBBOCK COUNTY;

 

NO. 2007-446,768; HONORABLE LARRY B. "RUSTY" LADD, JUDGE



 



 

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

Appellant, Betty Rios, appeals her
conviction for misdemeanor driving while intoxicated.[1]  Her three-day sentence and $2,000.00 fine
were suspended and she was placed on community supervision for twelve
months.  We will affirm.

Factual and Procedural History

            Brothers,
Ruben and Eddie Lopez, lived next door to each other.  One night in August 2007, Ruben held an
informal party.  Eddie was there and so
was Ruben’s then-coworker, Robin Decker. 
Decker had arrived at Ruben’s house between ten and eleven o’clock that
night and parked his pickup truck on the street,
partially blocking the driveway[2]
to the house that Eddie shared with appellant, his girlfriend.

            As
Decker and some other guests[3]
were in Ruben’s front yard having a few beers, Decker saw appellant drive her Camaro up to her and Eddie’s residence next door.  She had not been at Ruben’s party since
Decker arrived, and there was no evidence as to her activities just prior to
her arrival.  Despite the fact that
Decker’s truck was partially blocking her driveway, appellant pulled into her
driveway without incident.  She was at
her house for a short period of time then returned to her car to leave.  This time, she did not successfully maneuver
around Decker’s poorly-parked pickup truck. 
She hit the truck, immediately pulled forward back into her driveway,
got out of her car, and verbally expressed her frustration.

            Decker
approached Eddie, seeking his thoughts on what to do about the matter.  Decker testified, without objection, that,
after some time, perhaps a few minutes, Eddie announced that he wanted “to get
[appellant] in some trouble” and called the police to deal with the
matter.  According to Decker, Officer Doak Funk of the Lubbock Police Department arrived
approximately ten to fifteen minutes after Eddie called.  Decker testified that Funk arrived
approximately twenty minutes after he first saw appellant pull into her
driveway but conceded that it could have been a little more than twenty
minutes.  Though Funk did not recall
precisely how long it took him to arrive after being dispatched to the scene,
he estimated that it took him two to three minutes.  

            When
Funk arrived at appellant and Eddie’s residence, appellant was standing in the
front doorway of the house.  She offered
that she had not been drinking and admitted to having hit Decker’s truck as she
tried to back out of the driveway. 
According to Funk, appellant exhibited characteristic signs of
intoxication: unsteady stance, slurred speech, and an odor of alcohol on her
breath.  He explained that she stumbled
and nearly fell twice as she went to the car to get her identification and
that, during the course of their conversation, she
continued to have to lean on her car despite his instructions to not do
so.  Decker did not see appellant drink
prior to her arrival at her house or while she was at her house before she
attempted to depart.  

            Appellant
refused to perform standardized field sobriety tests (FSTs) or provide a breath
or blood sample and was arrested.  She
was charged with driving while intoxicated. 
A Lubbock County jury found her guilty of said offense and sentenced her
to three days in the Lubbock County Jail and a fine of $2,000.00.  Both the sentence and the fine were
suspended, and appellant was placed on community supervision for twelve
months.  She timely appealed and now
challenges the legal and factual sufficiency of the evidence to support her
conviction.  She maintains that the
evidence was insufficient to show that she was intoxicated when she operated a
motor vehicle.[4]

Standards of Review

            In
assessing the legal sufficiency of the evidence, we review all the evidence in
the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State,
133 S.W.3d 618, 620 (Tex.Crim.App. 2004).  In conducting a legal sufficiency review, an
appellate court may not sit as a thirteenth juror, but rather must uphold the jury’s
verdict unless it is irrational or unsupported by more than a mere modicum of
evidence.  Moreno v.
State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

            In
assessing the factual sufficiency of the evidence, we must determine whether,
considering all the evidence in a neutral light, the jury was rationally
justified in finding the appellant guilty beyond a reasonable doubt.  See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App.
2006).  In performing a factual
sufficiency review, we must give deference to the trier
of fact’s determinations if supported by evidence and may not order a new trial
simply because we may disagree with the verdict.  See id. at
417.  As an appellate court, we are not
justified in ordering a new trial unless there is some objective basis in the
record demonstrating that the great weight and preponderance of the evidence
contradicts the jury’s verdict.  See
id.  An appellate opinion
addressing factual sufficiency must include a discussion of the most important
evidence that appellant claims undermines the jury’s
verdict.  Sims v.
State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).  However, when a defendant’s version of the
facts conflicts with other evidence, we must recognize that it is the jury’s
prerogative to judge the credibility of the evidence and to ascribe the weight
to be given to the evidence.  See Jones
v. State, 944 S.W.2d 642, 647–48 (Tex.Crim.App. 1996). 
A verdict is not manifestly unjust simply because the trier of fact resolved conflicting evidence in favor of the
State.  Roise v. State, 7
S.W.3d 225, 233 (Tex.App.—Austin 1999, pet. ref’d).

Analysis

            To
establish the offense of driving while intoxicated, the State must prove the
defendant was intoxicated while operating a motor vehicle in a public
place.  Tex.
Penal Code Ann. § 49.04(a); Stoutner
v. State, 36 S.W.3d 716, 721 (Tex.App.—Houston
[1st Dist.] 2001, pet. ref’d).  The Texas Penal Code defines “intoxicated” as
(1) “not having the normal use of mental or physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, a dangerous drug, a
combination of two or more of those substances, or any other substance into the
body,” or (2) “having an alcohol concentration of 0.08 or more.”  Tex. Pen. Code Ann. § 49.01(2) (Vernon 2003); Russell v. State, 290 S.W.3d 387, 396
(Tex.App.—Beaumont 2009, no pet.).

            For
the evidence to be sufficient to support a conviction for driving while
intoxicated, the record must establish a temporal link between the defendant’s
intoxication and his or her driving.  See
Kuciemba v. State, 310
S.W.3d 460, 462 (Tex.Crim.App. 2010).  That is, there must be some evidence of (1)
how recently the vehicle had been driven, or (2) how much time had elapsed
between the accident and the arrival of police so as to furnish the jury with
an informed basis for determining the relationship, if any, between the defendant’s driving and his or her intoxication.  Stoutner, 36 S.W.3d at 721; Weaver v. State, 721 S.W.2d 495, 498 (Tex.App.—Houston [1st Dist.] 1986, pet. ref’d).  Indications that the defendant was
intoxicated when the police arrived do not, alone, establish that the defendant
was intoxicated at the time the defendant was driving.  Stoutner, 36 S.W.3d at 721. 
Absent evidence in the record to establish the time of the accident or
the driving in a public place, the evidence is insufficient to show that the
defendant drove while intoxicated.  Id.

Evidence of Intoxication

            Funk’s
observations of signs typically associated with alcohol intoxication, combined
with his opinion that appellant was intoxicated, sufficiently support the
jury’s finding that appellant was intoxicated. 
See Russell, 290 S.W.3d at 397 (citing Whisenant
v. State, 557 S.W.2d 102, 105 (Tex.Crim.App.
1977)); Henderson v. State, 29 S.W.3d 616, 622 (Tex.App.—Houston
[1st Dist.] 2000, pet. ref’d).  Further, the jury could have inferred from
appellant’s refusal to take a breath test that she believed she was
intoxicated.  See Russell,
290 S.W.3d at 397; see also Tex.
Transp. Code Ann. § 724.061 (Vernon 1999) (providing that refusal of
request to submit to breath or blood test is admissible at trial); Bartlett
v. State, 270 S.W.3d 147, 153 (Tex.Crim.App.
2008) (concluding that evidence of refusal to submit to breath test is relevant
in DWI case as it “tends to show consciousness of guilt”).

            Based
on evidence that appellant refused to submit to tests and exhibited slurred
speech, an unsteady stance, and an odor of alcohol on her breath, a rational
jury could have found beyond a reasonable doubt that appellant was intoxicated.

Evidence of Operation of Motor
Vehicle

            The
evidence is legally sufficient to support the conclusion that appellant was
intoxicated.  Now, we look to the record
for evidence that appellant operated a motor vehicle in a public place.

            As
a preliminary matter, we do not read the record to establish that appellant
entered 38th Street as she backed out of the driveway and hit Decker’s
truck.  A number of cases analyzing the
temporal link between intoxication and driving deal with a collision of some
variety.  See, e.g., Kuciemba, 310 S.W.3d at 462 (concluding that “[b]eing intoxicated at the scene of a traffic accident in
which the actor was a driver is some circumstantial evidence that the actor’s
intoxication caused the accident”); see also Stoutner,
36 S.W.3d at 721; Weaver, 721 S.W.2d at 498–99.  While there was a collision here, the driving
associated with the collision is not the instance of operating a motor vehicle
that we will examine.[5]  With respect to her driving out of the
driveway, the record suggests that she never entered a public road.  It appears that appellant hit the truck and
then pulled back into the driveway, not having entered the road on account of
the illegally-parked truck. 
Consequently, we limit our discussion of the evidence of appellant’s
driving to evidence of appellant’s driving prior to entering the driveway.    

            Such
evidence comes from Decker who explains that he noticed appellant’s Camaro turn onto 38th Street, “tires squealing a little bit,
or something.”  He explained that the
vehicle pulled into appellant’s driveway and that appellant exited the vehicle
as the driver.  The record establishes
that her house was located on 38th Street and that 38th Street is a public
road.  On cross-examination, Decker
expressed his certainty that it was appellant whom he saw get out of the car as
the driver.  From this evidence, the jury
could have reasonably concluded that appellant operated her car in a public
place.

Temporal Link between Intoxication and
Operation

            Evidence
of the precise time of an accident or of driving is not the indispensable
element of the offense of driving while intoxicated.  See Zavala v. State, 89 S.W.3d
134, 139 (Tex.App.—Corpus Christi 2002, no
pet.).  Such evidence is, in itself, not
critical, except as it establishes the time during which the trier of fact must consider the defendant’s state and
determine whether, during that episode of driving, the defendant was
intoxicated.  Id.  So, the State must present evidence of the time
at which the defendant was driving so as “to furnish the jury with an informed
basis for determining the relationship, if any, between the [defendant]’s
driving and his intoxication, if proven.” 
Id. (quoting Kennedy v. State, 797 S.W.2d 695, 697 (Tex.App.—Houston [1st Dist.] 1990, no pet.)).  We must look for evidence that links
appellant’s driving and appellant’s intoxication to determine the critical
issue: whether there is evidence from which the trier
of fact can conclude that, at the time of the driving in question, whenever
that might be, appellant was intoxicated. 
See id.  We remain
mindful that the jury may draw multiple reasonable inferences as long as each
inference is supported by the evidence presented at trial.  See Hooper v. State, 214 S.W.3d 9, 15 (Tex.Crim.App.
2007).

            Decker
explained that appellant pulled into her driveway from 38th Street
approximately twenty minutes prior to Funk’s arrival and determination that
appellant was intoxicated.  There is no
other evidence of appellant having operated her vehicle in a public place that
night.  Though Decker does concede that
it could have been a little bit longer than twenty minutes, his testimony is
some evidence of a temporal link between appellant’s operation of a motor
vehicle in a public place and her intoxication. 
Though less clear, Funk’s testimony also establishes an approximate time
at which appellant was driving.  Funk
estimated that he arrived at the residence within two to three minutes of the
dispatch.  From this evidence, the jury
could have found that appellant was intoxicated while she operated a motor
vehicle in a public place.

Evidence Undermining the Verdict

            Funk
did not recall how long it took him to arrive at the scene.  Relying on his report, he estimated that it
took him two to three minutes.  Funk’s
timeline, it appears, varies somewhat from Decker’s testimony that ten to
fifteen minutes elapsed between Eddie’s phone call and Funk’s arrival.  It is the jury’s task to resolve such
conflicts in evidence.  See Swearingen
v. State, 101 S.W.3d 89, 97 (Tex.Crim.App.
2003).  This apparent inconsistency does
not render the evidence factually insufficient. 


            We
also note the apparently volatile context of the night’s events.  Appellant mentioned during her recorded ride
to the police station, and there was some testimony at trial concerning, a
protective order in effect against Eddie, perhaps as a result of an earlier
domestic dispute although the details of any underlying incident are not clear
from the record.  We also learn from
Decker that Eddie expressed his desire to get appellant in “some trouble,”
presumably as a form of retaliation against appellant.  That testimony came in without objection, and
the record is clear that it was Eddie, rather than the damaged truck’s owner,
Decker, who summoned police about the collision.

            In
addition to evidence of Eddie’s nefarious scheme, we note that the DVD of
appellant’s stay in the DWI room contradicts Funk’s description of appellant’s
stance, gait, and speech.  For most of
the five minutes recorded, appellant is seen standing steady and still.  When, at Funk’s direction, she walked over
and bent down to pick up the warning form that she had intentionally dropped,
she did so without evidence of unsteadiness and without any type of assistance.  Funk had testified that she was stumbling and
nearly fell twice during his conversation with her at the house.  She maintained throughout her time in the DWI
room that she was at her house and did nothing wrong.  In doing so, she was obviously frustrated and
highly emotional, but her speech remained mostly comprehensible.  We add that appellant was able to maneuver
around Decker’s illegally-parked truck twenty minutes before Funk arrived,
arguably an indication that she was not intoxicated when she pulled into her
driveway.

            So,
the record reveals evidence that would suggest that appellant was not
intoxicated when Funk arrived or, at least, not intoxicated to the degree that
she was slurring her speech and falling down. 
Other evidence could be said to undermine the conclusion that she was
intoxicated at the time she arrived in her driveway.  Nonetheless, we must afford due deference to
the jury’s verdict when its verdict is reasonably supported by the record.  See Marshall v. State, 210 S.W.3d 618, 625 (Tex.Crim.App.
2006).  Again, it lies within the jury’s
exclusive province to reconcile conflicts, contradictions, and inconsistencies
in the evidence.  Swearingen, 101 S.W.3d at 97. 
That we may disagree with the verdict or may acknowledge that there is
considerable evidence contrary to the verdict does not authorize us to set
aside the jury’s determination.  See
Watson, 204 S.W.3d at 417.

            Based
on evidence that appellant operated her motor vehicle on a public road
approximately twenty minutes prior to having been deemed intoxicated, we
conclude that a reasonable trier of fact could have
found that appellant was intoxicated at the time she drove a motor vehicle in a
public place and that the evidence of the same was not so weak or against the
overwhelming weight of the evidence as to be manifestly unjust.  See Ross, 133 S.W.3d at 620; see
also Watson, 204 S.W.3d at 417. 
We, therefore, find the evidence both legally and factually sufficient
to sustain appellant’s conviction for driving while intoxicated and overrule
appellant’s issue.

Conclusion

            Having
overruled appellant’s sole issue, we affirm the judgment of the trial court.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

.








Do
not publish.  











[1]
See
Tex. Penal Code Ann. § 49.04(a), (b) (Vernon 2003).

 





[2]
According to the officer who responded to the
residence, Decker was issued a citation for having illegally parked his
vehicle.

 





[3]
Though it is unclear, the Lopez brothers may
have been with Decker in the front yard. 
No other attendee testified at trial.

 





[4] Appellant cites McCafferty
v. State, 748 S.W.2d 489 (Tex.App.—Houston [1st Dist.] 1988, no pet.), in support of her
contention that the evidence is insufficient to sustain her conviction for
driving while intoxicated.  McCafferty, however, was decided under the
“reasonable alternative hypothesis” paradigm previously applied in
circumstantial evidence cases.  Id. at 491.  The
“reasonable alternative hypothesis” paradigm was later overruled by Geesa v. State, 820 S.W.2d 154, 161 (Tex.Crim.App. 1991). 
We now apply the same standard of review to both direct and circumstantial
evidence cases, and on this basis, distinguish McCafferty
and like cases from the instant case.  See Chaloupka v. State,
20 S.W.3d 172, 175 (Tex.App.—Texarkana 2000, pet. ref’d).





[5]
The collision may be probative of appellant’s
intoxication at the time Funk arrived, but, on these facts, does not seem to be
evidence of having operated a motor vehicle in a public place.  Since there is sufficient evidence of
appellant’s intoxication apart from evidence relating to the collision, we need
not consider or decide such matter here.